UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LG.PHILIPS LCD CO., LTD,                    )
                                            )
              Plaintiff,                    )
                                            )
       vs.                                  )        Case Number: 1:05MC00426
                                            )
TATUNG CO. OF AMERICA, TATUNG               )        Judge: John D. Bates
COMPANY, AND CHUNGHWA PICTURE               )
TUBES, LTD.                                 )        Deck Type: Miscellaneous
                                            )
              Defendants.                   )
                                            )

## THIRD PARTY MCKENNA LONG & ALDRIDGE LLP'S OPPOSITION TO THE MOTION TO COMPEL PRODUCTION OF DOCUMENTS OR SUPPLEMENTAL PRIVILEGE LOG, OR FOR *IN CAMERA* INSPECTION FILED BY CHUNGHWA PICTURE TUBES

The Court should deny Defendant Chunghwa Picture Tubes' ("CPT") Motion to Compel Production of Documents or Supplemental Privilege Log or for *In Camera* Inspection because (1) CPT failed to meet and confer before filing its motion, which seeks additional discovery well after the close of discovery, and (2) McKenna Long & Aldridge LLP ("MLA") has met its burden of demonstrating that the information sought by CPT is subject to the attorney-client privilege and/or work product doctrine. If the Court does not deny the Motion, MLA asks, in the alternative, that the Court transfer the Motion to the Central District of California, the court with jurisdiction over the underlying litigation.

### Background

MLA is patent counsel for the plaintiff LG.Philips LCD Co., Ltd. ("LPL"). Notably, MLA is also counsel of record for LPL in the California action. On March 8, 2005, CPT served a Rule 45 subpoena on MLA seeking documents related to MLA's representation of LPL. (See Garner Affidavit, Ex. 3.) McKenna served a written response to the subpoena, produced over

1

5200 pages of documents, and produced a privilege log identifying documents withheld on the basis of the attorney-client privilege and/or work product doctrine. After CPT raised some concerns regarding MLA's privilege log, MLA voluntarily agreed to provide a supplemental privilege log to clarify some of the entries on the original log even though MLA believed that CPT's concerns were without merit. After receiving the supplemental privilege log, CPT again contacted MLA to discuss additional concerns. Although MLA again believed that those concerns were without merit, in the interest of cooperation, MLA agreed to again supplement its privilege log in an attempt to address CPT's concerns. MLA served its Second Supplemental Privilege Log on or about June 15, 2005, more than four and a half months ago.

Shortly thereafter, CPT contacted MLA regarding additional alleged deficiencies in MLA's Second Supplemental Privilege Log. Although MLA believed that entries on the Second Supplemental Privilege Log were appropriate, in the interest of cooperation and to avoid burdening the Court with the dispute, MLA agreed to a meet and confer telephone discussion with attorneys from Howrey, Simon Arnold & White, LLP ("Howrey"), CPT's counsel, to discuss the privilege log. CPT was scheduled to call McKenna on June 28, 2005 at 11:00 a.m. On the scheduled date and time, CPT failed to call and failed to provide advance notice that they were no longer available. Instead, at 7:00 p.m. that same day, CPT sent a letter stating that "due to unexpected emergencies," they were unable to respond directly to a previously dated letter from McKenna, but made no mention of the telephone conference for which CPT failed to appear. (See Declaration of Shari L. Klevens ("Klevens Decl."), Ex. 1.)

CPT then contacted MLA asking for an additional date and time for a telephonic meet and confer. MLA was concerned that CPT would not appear at the scheduled date and time, but nonetheless agreed to such call in light of the local rules of the court, which require the parties to

meet and confer before motions are brought before the Court. The parties agreed to meet and confer on July 21, 2005 by telephone. Shortly after midnight EDT on July 21, 2005 (9:00 p.m. PDT July 20), MLA received a voice message from CPT stating that it was no longer available for the meet and confer scheduled later that day and asking whether the meet and confer could be rescheduled. Once again, MLA agreed. (See Klevens Decl., Ex. 2.)

During numerous discussions with CPT regarding the scheduling of the meet and confer, CPT insisted that any calls be scheduled as quickly as possible, as the discovery deadline in the case was August 5, 2005 and CPT expressed concern that it would not be entitled to additional discovery regarding the privilege documents after that date. (See, e.g. Klevens Decl., Ex. 3.) In light of that position, when MLA did not hear from CPT again before the August 5, 2005 discovery deadline, it was apparent to MLA that CPT had reviewed MLA's correspondence regarding the privilege log and considered the issues resolved.

However, on September 28, 2005, almost two months after the close of discovery, and two and a half months after the last scheduled meet and confer, which CPT had cancelled, CPT again contacted MLA regarding its privilege log. (See Garner Affidavit, Ex. 17.) Despite that delay and without any explanation whatsoever, CPT demanded that MLA meet and confer within the following seven days. (Id.) MLA responded in writing and stated that Gaspare J. Bono, Esq., the lead attorney on this matter for MLA, was out of the office conducting depositions for the following several weeks. (See Garner Affidavit, Ex. 18.) However, MLA agreed to meet and confer on October 26, the date of Mr. Bono's return to the office, or on October 27 or 28, which was only two weeks away. MLA further asked CPT to send a written letter outlining any remaining issues regarding the privilege log and stated that "we will make every attempt to review those issues and address your concerns in a timely manner." (Id.) To MLA, this proposal

seemed reasonable in light of the already considerable delay caused by CPT in scheduling the meet and confer. CPT failed to respond to that offer, however, and instead waited several weeks and then, without any notice or communication with MLA, filed the instant motion on October 24, just two days before MLA was available to meet and confer.

### Argument

I.  **THE MOTION SHOULD BE DENIED BECAUSE CPT FAILED TO MEET AND CONFER BEFORE FILING ITS MOTION, WHICH SEEKS ADDITIONAL DISCOVERY AFTER THE DISCOVERY DEADLINE WITHOUT LEAVE OF THE COURT**

A.  **The Motion Should Be Denied Because CPT Failed To Meet and Confer Before Filing Its Motion**

As described above, CPT had numerous opportunities throughout June and July to seek the requested discovery. Instead, CPT abruptly cancelled two scheduled meet and confer telephone conferences without explanation and waited to resume its discussions until after the close of discovery. Then, in spite of CPT's own delay of over two months, CPT contacted MLA and demanded an immediate meet and confer without regard for previously scheduled commitments of MLA. When MLA was unable to meet and confer within such a limited timetable, CPT filed the instant motion without following the local rules requiring a meet and confer. To add insult to injury, CPT then sought an expedited schedule and hearing, <u>even though any and all delay on this matter was caused by CPT's failure to contact MLA for over two months</u>. In light of CPT's failure to meet and confer, which it clearly could have done on numerous occasions, CPT's motion should be denied. See <u>Alexander v. Federal Bureau of Investigation</u>, 186 F.R.D. 185 (D.D.C. 1999) (dismissing motion where party failed to meet and confer).

Instead of engaging in a meet and confer discussion, as required by local rule 7.1(m), CPT instead asks the Court to undertake the huge task of reviewing *in camera* almost 1500 pages of documents. Had CPT met and conferred with MLA as required under the rules, the parties likely could have narrowed the number of documents at issue. CPT should not be rewarded for its failure to meet and confer by receiving the relief it seeks. See Alexander, 186 F.R.D. at 187 ("The court will not condone this approach because the practice advocated by plaintiffs would render [the local rule] meaningless. Any nondispositive motion filed by either side must comply with [the local rule], or it will be denied."). Thus, CPT's motion should be denied.[1]

**B.    The Motion Should Be Denied Because Discovery Is Closed**

CPT's motion should also be denied because it is an inappropriate attempt to seek additional discovery after the close of discovery in the underlying action. Under the scheduling order in the Central District of California ("California court") in the underlying action ("California case"), the discovery deadline was August 5, 2005. (See Garner Decl., Ex. 21.) Thus, if CPT wanted to inquire about entries on MLA's privilege log and seek a supplemental log or additional documents, CPT should not have waited until after the discovery deadline to obtain the discovery. As is evidenced by CPT's own letters, CPT understood that a failure to resolve the issues regarding the privilege log could result in CPT's failure to obtain additional discovery. (See Klevens Decl., Ex. 3.) CPT assumed that risk when it failed to contact MLA about the privilege log until after the discovery deadline in this case. If CPT now seeks additional discovery, CPT must petition the California Court, which has jurisdiction in the

---

[1] CPT's motion should also be denied because it is nothing more than an attempt to harass MLA, which is counsel of record for LPL in this action against CPT. It is simply unfair and unreasonable for the Court to allow CPT to continue to harass a party's counsel, after that counsel has made numerous attempts to cooperate and resolve any legitimate outstanding issues. Indeed, MLA has already voluntarily supplemented its privilege log twice. The additional harassment by CPT on Plaintiff's counsel should stop.

underlying case and which originally set the discovery deadline, to enlarge the discovery
deadline to allow CPT to seek additional discovery outside of that time period.

MLA suspects that CPT has not sought enlargement of the discovery order in the
California court, however, because similar requests have previously been denied by that court.
For example, in the court's August 12, 2005 Order, the court denied CPT's Ex Parte Application
for Relief from the Discovery Cutoff, in which CPT sought leave to take depositions and seek
production of documents from certain non-party witnesses beyond the fact discovery deadline.
(See Klevens Decl., Ex. 4.)  In the California court's minute order, the court stated that "based on
consideration of the papers submitted, the application is DENIED, as the Court is not persuaded
that it is necessary or reasonable for Chunghwa to conduct up to 24 additional depositions of
non-party witnesses.  Discovery in this case has been ongoing for more than 2 years."  (See id.)

CPT's motion not only fails to inform the Court of these facts, but also misleads the
Court regarding the discovery deadline, by notifying the Court of an upcoming deadline in the
case for filing motions.  Specifically, CPT states that "CPT is subject to a scheduling order in the
California case that requires any hearings on discovery motions to be completed on or before
November 14, 2005."  (See Mem. at 16 (emphasis added).)  As the scheduling order from the
California court shows, however, the November 14, 2005 deadline was the deadline for filing
dispositive motions in the case and is the final deadline before the court's Pre-Trial Conference.
(See Klevens Decl., Ex. 5.)  Moreover, the California court moved that deadline to December 19,
2005.  (See id.)  This further undermines the alleged urgency of this motion.  Indeed, even if this
motion was dispositive, which it is not, the deadline for hearing the motion would be December
19, 2005, not November 14, as CPT has misled the Court to believe.   Contrary to CPT's

suggestion, the deadline is not the deadline for <u>discovery</u> motions, and that deadline does nothing to alter or enlarge the August 5, 2005 discovery deadline.

On October 20, 2005, CPT filed in the California court an *Ex Parte* Application to Have Four Motions to Compel Accepted for Filing and Set for Hearing on November 8, 2005 or for Some Date after November 8, 2005. (<u>See</u> Klevens Decl., Ex. 6.) Because the discovery deadline has passed, CPT similarly could have sought leave to file this motion to compel, however, CPT filed no such application to have the motion accepted for filing either in the California court or in this court.[2]

It is significant that CPT failed even to inform the Court of any of these facts, or of the significant delay that they themselves have caused. Indeed, CPT's own inaction in this regard belies its position that the discovery sought should be compelled. Instead, CPT wrongly implies that MLA has failed to meet and confer. In point of fact, it was CPT. Therefore, not only has CPT failed to meet and confer as required by the Rules, but it also blatantly misled the Court by suggesting that CPT is a victim of MLA's failure to cooperate. The facts clearly show that this is not the case. Because CPT failed to meet and confer, and because the discovery deadline has passed, the motion for expedited hearing and to compel should be denied.

**II.     THE MOTION SHOULD BE DENIED BECAUSE MLA HAS MET ITS BURDEN OF DEMONSTRATING THAT THE DOCUMENTS AT ISSUE ARE PROTECTED FROM DISCLOSURE BY THE ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE**

      **A.     <u>Under Federal Circuit Law, Which Applies To This Dispute, MLA Has Met Its Burden Of Demonstrating Privilege With Respect to the Documents Identified in CPT's Motion</u>**

---

[2] While the Magistrate Judge granted CPT's request, CPT's motions were directed solely to LPL, a party to the litigation. As stated above, requests by CPT for discovery from third parties outside the discovery deadline have been denied.

As an initial matter, Federal Circuit law controls on attorney-client issues relating to patent law. See In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000). In Spalding, the Federal Circuit held that the invention record of a patent "constitutes a privileged communication, as long as it is provided to an attorney for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding." Id. at 805 (internal quotations and citations omitted). Indeed, decisions by district courts applying Federal Circuit law indicate that the courts are willing to take a more expansive view of the attorney-client privilege in patent cases. See, e.g., Softview Computer Products Corp. v. Haworth, Inc., No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 4254 (S.D.N.Y. Mar. 31, 2000) (applying the Spalding standard for privilege to allow the withholding of documents relating to the patentee's U.S. patent application); see generally McCook Metals, L.L.C. v. Alcoa, Inc., 192 F.R.D. 242 (N.D. Ill. 2000) (concluding that a variety of prosecution-related documents, including draft patent applications, invention control reports, inventor questionnaires, and a duty of disclosure reminder form were privileged).

Defendants argue that the law of the Federal Circuit should only apply if the issues are unique to patent law. However, as stated in Sharper Image Corp. v. Honeywell Int'l, Inc., 222 F.R.D. 621, 625 n.3 (N.D. Cal. 2004), even in areas "that are arguably not in arenas of 'substantive' patent law, their disposition 'is affected by the special circumstances of the patent law setting in which those issues arise.'" (citations omitted). With that in mind, the court recognized that the issue is whether applying the law of the regional circuit would "impinge on the goal of patent law uniformity." See id. (citations omitted).

In Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc., 227 F.R.D. 382 (W.D. Pa. 2005), a case similar to this one, the defendant claimed that the patents were void and

unenforceable due to inequitable conduct on behalf of the plaintiff.  In discovery, the defendant

moved to compel the production of documents.  In deciding that Federal Circuit law applied to

resolve the attorney-client privilege issues raised in the case, the Pennsylvania court cited to the

Spalding case and concluded that defendant's "allegation of inequitable conduct and the possible

waiver of Plaintiff's attorney-client privilege thereto implicates a substantive patent law issue."

Id. at 391.  Defendant further claimed that the patents-in-suit were unenforceable because

material prior art was not disclosed to the PTO.  Id.  In response, the court stated that "[c]learly

the question of possible patent protection and whether a patent is enforceable implicates the

jurisprudential responsibilities of the Federal Circuit Court."  Id. at 392.  Thus, the court

determined that Federal Circuit law applied to plaintiff's alleged waiver of both the attorney-

client privilege and the work product doctrine.

    Here, many of the documents withheld as privileged by MLA relate to issues concerning

patent law and, thus, the law of the Federal Circuit, which is more expansive than the law of the

District of Columbia, applies to privilege questions regarding those documents.  While the

burden of demonstrating privilege under the Federal Circuit law falls on MLA, MLA has more

than met its burden with regard to the documents at issue.  As Defendants' point out, in the case

of SmithKline Beecham Corp. v. Apotex Corp., No. 98-C-3952, 2000 WL 1310668 at *6 (N.D.

Ill. Sept. 13, 2000), the court reasoned that a good rule of thumb to determine whether a

document is privileged in the Federal Circuit, is whether the documents were "prepared in order

to allow attorneys to assess patentability and sift information to prepare applications."  Here, all

of the documents withheld and logged by MLA, including documents reflecting communications

between LPL and its attorneys to assess patentability, were created to assist with the preparation

of LPL's patent applications.

Federal Circuit law would also govern on issues related to the work product doctrine. Specifically, CPT argues that "information may be claimed as attorney work product only if (1) it is prepared by an attorney, (2) it is so prepared in anticipation of litigation, and (3) it contains the attorneys' opinions, judgments and thought processes." This is a serious misquote of the Rule. Indeed, Rule 26(b)(3) states that work product includes information prepared "<u>by or for</u> another party or <u>by or for</u> that party's attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3) (emphasis added). Thus, the documents prepared by or for any of LPL's attorneys were properly withheld under the work product doctrine, particularly because the documents were prepared in anticipation of litigation. As an example, some of the documents were written to advance the prosecution of the patents at issue in this litigation, as substantiated by the Petition to Make Special filed March 16, 1998 in the prosecution of U.S. Patent No. 5,835,139. <u>See</u> Klevens Decl., Ex. 7. The Petition, which was produced by MLA to CPT in response to the Subpoena, states that "[t]here is an infringing device actually on the market," and that "at least some of the claims in the application are unquestionably infringed." Therefore, the documents subject to the work product doctrine were prepared by or for LPL's attorneys in anticipation of this and other litigation and were properly withheld.

Moreover, the "mental impressions, conclusions, or legal theories of an attorney . . . known as opinion work product, 'are entitled to special protection." <u>See</u> <u>Willingham v. Ashcroft</u>, No. 02-1972, 2005 U.S. Dist. LEXIS 6488 (D.D.C. 2005). <u>See also</u> <u>Marshall v. District of Columbia Water & Sewage Authority</u>, 218 F.R.D. 4 (D.D.C. 2003) ("[I]t is unnecessary to ascertain whether the attorney-client privilege applies because the documents are absolutely protected from discovery by Federal Rule of Civil Procedure 26(b)(3)"). Many of the documents withheld by MLA fall within the category of opinion work product. Thus, even if the

documents on MLA's privilege log were not entitled to protection under the attorney-client privilege, a proposition with which MLA strongly disagrees, the documents are also protected from disclosure under the work product doctrine.[3]

**B.    Application of the Privilege to the Disputed Documents**

**1.    MLA Has Not Withheld Simple Transmittal Letters and Has Only Withheld Documents Protected from Disclosure by the Attorney-Client Privilege**

CPT has requested that MLA produce all "transmittal letters" and states that the log contains correspondence between Song Jung and various foreign prosecuting attorneys, "and in many cases they appear merely to be transmittal letters." (See Mem. at 11.) This statement is simply false. First, as MLA has previously explained to CPT, MLA did not withhold as privileged any "transmittal letters" or "faxes" that merely forwarded correspondence from one entity to another if that correspondence did not contain additional privileged content, such as confidential client information or legal advice. For example, documents numbered MLA 002578, MLA 002614, MLA 002615, MLA 002616, MLA 002617, and MLA 002618, among others, were produced in response to the Subpoena and are straightforward transmittal letters from counsel to LPL. While some of the letters withheld by MLA and identified on MLA's privilege log may have "transmitted" other attachments, those letters contained additional material protected by the attorney-client privilege and/or the work product doctrine.

Second, some of the documents identified by CPT in footnote six did not contain an attachment of any kind. For example, at least the following documents were merely letters with no attachments: PRIV 0050-0064, PRIV 0096-0097, PRIV 0099-0123, PRIV 00140-00151,

---

[3] A review of the privilege logs prepared and filed by CPT in this litigation on behalf of CPT and one of CPT's witnesses shows that there are no material differences between those logs and the privilege log prepared and filed by MLA. See Klevens Decl., Ex. 8.

PRIV 0152-0168, PRIV 189-0197, PRIV 0207-0212, PRIV 0464-0474, PRIV 0530-0531, PRIV 0581-0582, PRIV 0585-0586, PRIV 0667-0678, PRIV 0863-0865, PRIV 0877-0878, PRIV 1372-1373, PRIV 1392-1395.    Thus, CPT's demand that MLA separately identify the attachments to those letters is not warranted.

Finally, with regard to the remaining documents identified by CPT in footnote six, the attachments sent with those letters, faxes and/or emails were either already produced in response to the Subpoena or are themselves subject to the attorney-client privilege or work product doctrine.  To the extent that they are subject to the attorney-client privilege or work product doctrine, CPT is not entitled to production of those documents.

### 2.    MLA Has Produced The Documents Relating to Recordation of Patent Assignments

The Subpoena served on MLA by CPT sought documents related to the Side-Mount U.S. Patents and Side-Mount Foreign Patents, as those terms were defined in the Subpoena.  MLA has previously stated that all such documents currently maintained at MLA, including those files previously transferred to MLA from other law firms retained by LPL, and the documents of the prosecution attorneys who prosecuted the patents and patent applications (including Mr. Song Jung) were produced and/or logged.  It is disingenuous for CPT to imply that they have not received any documents related to the recordation of such assignments, when the Defendants not only received such documents in MLA's production, but spent several hours during the deposition of Mr. Song Jung questioning him about assignment documents.  As MLA has clearly stated, MLA has produced or logged all documents contained in the patent files or patent application files of the Side-Mount U.S. Patents and Side-Mount Foreign Patents maintained at

MLA. If the recordation documents were in those files maintained at MLA, then those documents have been produced or logged.[4]

**3.    MLA Has Repeatedly Identified The Patents Related to the Documents Identified on the Privilege Log**

In previous correspondence with CPT, MLA stated that all of the documents on the privilege log are related to the patents identified in the Subpoena by CPT, namely, the Side-Mount U.S. Patents and Side-Mount Foreign Patents, as those terms were defined in the Subpoena. In accordance with the Subpoena, all of the documents produced by MLA or identified on MLA's privilege log referred or related to the limited number of patents specifically identified in the Subpoena. With that in mind, MLA fails to understand why CPT would need additional information.

Rule 45(d)(2) merely requires a party to provide information about its privileged documents "sufficient to enable the demanding party to contest the claim." The identification of the patents referred to in each privilege log entry would not assist CPT in any way in determining the validity of MLA's privilege claims with respect to those documents. Indeed, the applicability of a privilege does not hinge on the identification of a particular patent, but rather on the type of document at issue and the information contained therein. Because such patent information is not required by the Rule, and it would not assist CPT in determining the

---

[4] Moreover, MLA's files, which were transferred to MLA from other law firms previously retained by LPL, contain the documents of the prosecution attorneys who prosecuted the patents and patent applications (including Mr. Song Jung) and were produced and/or logged. Because MLA produced the files in the manner in which they were maintained in the normal course of business by those individuals, MLA's production is inherently limited by the way the files were maintained by the other law firms. To MLA's knowledge the files were complete and intact, but MLA cannot say whether all documents ever generated by all of the attorneys at the other law firms prosecuting those patents and patent applications, who are not employed by MLA, were contained in the MLA files that were produced. Therefore, if CPT believes that additional recordation documents exist but do not appear on MLA's privilege log and have not been produced, then any such documents do not exist in the files of MLA.

applicability of the attorney-client privilege and/or work product doctrine, no purpose can be served by ordering MLA to supplement the privilege log as CPT has requested.

4. **MLA Should Not Be Required to Log Documents Generated After the Commencement of the Litigation**

CPT has asked the Court to compel MLA to log all privileged documents that were created after the date LPL filed the instant lawsuit against CPT. However, MLA understands that some time ago, CPT entered into an agreement with Morgan Lewis, MLA's co-counsel in the California action, whereby no parties would log documents created after the filing of the action. It is disingenuous for CPT to suggest that CPT, Howrey, and Morgan Lewis should not have to log documents created after the filing of the complaint, but that LPL and MLA should. We assume that CPT is not agreeable to logging all of its privilege and work-product documents created after the filing of this lawsuit on a privilege log and providing that to LPL. Nonetheless, because MLA has already stated that no documents contained in the patent files or patent application files of the Side-Mount U.S. Patents and Side-Mount Foreign Patents maintained at MLA were withheld from production because they were created after the filing date of the litigation, there is no dispute regarding this issue.

III. **IN THE ALTERNATIVE, THE MOTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA**

Regardless of what law applies to this dispute, the Central District of California is the most appropriate forum for this dispute. First, other than to forum shop for a jurisdiction that has a narrow construction on the scope of attorney-client privilege, it is not clear why CPT chose to issue its subpoena for documents on MLA in the District of Columbia. Since the documents at issue are LPL's documents merely in the custody of MLA as LPL's attorneys, CPT could have served a Rule 34 Request for Documents on LPL in the referenced litigation. See In re Jee, 104 B.R. 289 (Bankr. C.D. Cal. 1989) (finding that a party is required to produce documents in its

custody and control, even if the documents are located in a different judicial district than the one in which the request for documents is made, particularly because documents can always be moved). Indeed, because the requested LPL documents are merely in the possession of MLA as LPL's attorneys, CPT could and should have served a Rule 34 Request, which would have been served in the litigation in the Central District of California. In the alternative, CPT could have served its Rule 45 Subpoena on one of MLA's three California offices, including its Los Angeles office located in the Central District of California less than two blocks from CPT's Los Angeles office, rather than MLA's D.C. office. Under any of these scenarios, any disputes related to the documents would be decided by the Judge in the California case and would be governed by the law of the Ninth Circuit, to the extent the law of the Federal Circuit did not apply.[5] Thus, CPT's decision to issue the subpoena in the District of Columbia, rather than walking less than two blocks to serve the subpoena on MLA's Los Angeles office, seems like nothing more than forum shopping.

In light of the above, if the Court declines to deny this motion, the Court should transfer the matter to the Central District of California, where it can be heard by the California court. See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter, 211 F.R.D. 658, 660 n.2 (D. Kan. 2003) ("[I]t is within the discretion of the court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending."); see, e.g., Pactel Personal Comms. v. JMB Realty Corp, 133 F.R.D. 137 (D. Mo. 1990) (finding that parties did not have the right to prevent transfer where the transfer was requested by the third party receiving the

---

[5] Notably, the law of the Ninth Circuit regarding the attorney-client privilege, like the law of the Federal Circuit, is more expansive than the law of the District of Columbia Circuit. See, e.g., In re Fischer, 557 F.2d 209, 211 (9th Cir. 1977) ("[T]he privilege normally extends both to the substance of the client's communication as well as the attorney's advice in response thereto.")

subpoena); In re Subpoena Duces Tecum to Schneider National Bulk Carriers, Inc., 918 F. Supp. 272 (E.D. Wis. 1996) (finding that the court for the underlying action would be "in a better position to rule on the relevancy, undue burden and confidentiality of the respondents' requests.").[6]

Since the attorney-client privilege is the client's privilege, and all of the attorney-client and work-product privileges previously asserted in the case by both LPL and the Defendants, including CPT, have been and would be addressed under Federal or, alternatively, Ninth Circuit law, it is inappropriate that the privileges to be attached to the documents at issue here would be governed by a different law which appears to provide less attorney-client protection to LPL than to Defendants, simply because the documents happen to be in MLA's possession. This would lead to the anomalous result that Defendants would receive greater attorney-client privilege protection than LPL in the same case. For this additional reason, the matter should be transferred to the Court with jurisdiction over the underlying litigation.[7]

## Conclusion

For the foregoing reasons, the Court should deny Defendant Chunghwa Picture Tubes' Motion to Compel Production of Documents or Supplemental Privilege Log or for *In Camera*

---

[6] But see In re Sealed Case 141 F.3d 337 (D.C. Cir. 1998) (finding no jurisdiction to transfer motion to compel to court having jurisdiction over underlying action). However, in that case, the ancillary court was concerned that the court having jurisdiction over the primary litigation did not have personal jurisdiction over the nonparty who was subpoenaed. The court was also concerned about whether the discovery sought could be had in the district in which the court having underlying jurisdiction over the action resides. Neither of those concerns are borne out here, as the California court clearly has jurisdiction over MLA as counsel for Plaintiff, and because MLA also has an office in the Central District of California where the discovery could have been sought.

[7] If after the motion is transferred, assuming the Court grants an application by CPT for the motion to be accepted as filed, the California court may decide to have this motion heard along with the other motions to compel filed by CPT against LPL, which will be heard on November 9, 2005. See Klevens Decl., Ex. 6.

Inspection. In the alternative, the Court should transfer the Motion to the Central District of California.

Respectfully submitted,

Gaspare Bono (D.C. Bar No. 964379)
Shari L. Klevens (D.C. Bar No. 467476)
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

Attorneys for Third Party McKenna Long & Aldridge LLP

Dated:    November 2, 2005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Third Party Mckenna Long & Aldridge LLP's Opposition To The Motion To Compel Production Of Documents Or Supplemental Privilege Log, Or For *In Camera* Inspection Filed By Chunghwa Picture Tubes was served upon the following counsel of record via email, this 2nd day of November, 2005.

Anthony C. Roth, Esq.
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:    (202) 739-3000
Facsimile:    (202) 739-3001

James R. Wagner
Carly N. Van Orman
HOWREY SIMON ARNOLD & WHITE
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone:    (202) 783-0800
Facsimile:    (202) 783-6610

Mark Krietzman, Esq.
Frank Merideth, Esq.
GREENBERG TRAURIG, LLP
2450 Colorado Avenue, Suite 400 E
Santa Monica, CA 90404

_____
Shari L. Klevens

DC:50371146.2