UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LG. PHILIPS LCD CO., LTD.,<br><br>    Plaintiff,<br><br>  vs.<br><br>TATUNG CO. OF AMERICA,<br>TATUNG COMPANY AND<br>CHUNGHWA PICTURE TUBES, LTD.,<br><br>    Defendants.<br><br>AND CONSOLIDATED CASES<br><br>CHUNGHWA PICTURE TUBES, LTD.<br><br>    Counterclaimant,<br><br>  vs.<br><br>LG. PHILIPS LCD CO., LTD. AND<br>LG ELECTRONICS, INC.,<br><br>    Counterdefendant. | DC No.: 1:05MS00426 (JDB)<br><br>California Case No. CV-02-6775 CBM (JTLx)<br>Action filed: August 29, 2002<br><br>[Consolidated with Case Nos. CV 03-2866 CBM (JTLx), CV 03-2884 CBM (JTLx), CV 03-2885 CBM (JTLx) and CV 03-2886 CBM (JTLx) for discovery and claim construction] (Central District of California)<br><br>Hearing requested |

**REPLY OF CHUNGHWA PICTURE TUBES, LTD. IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS OR SUPPLEMENTAL PRIVILEGE LOG FROM THIRD PARTY MCKENNA LONG & ALDRIDGE LLP, OR FOR *IN CAMERA* INSPECTION**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................1

II. THE PARTIES HAD A LENGTHY AND SUBSTANTIAL MEET AND CONFER, AND ANY FAILURE TO MEET AND CONFER FURTHER WAS THE FAULT OF MCKENNA. ..................................................................................2

III. CPT TIMELY FILED THIS MOTION, WHICH SEEKS TO ENFORCE A PREVIOUSLY SERVED SUBPOENA. .....................................................................3

IV. THIS MOTION IS PROPERLY BEFORE THIS COURT. ..........................................5

    A. The Subpoena Was Properly Issued in DC, and Properly Served on McKenna's D.C. Office. ..........................................................................................6

    B. D.C. Circuit Law Prohibits this Court from Transferring this Matter. ....................7

V. D.C. CIRCUIT LAW, AND ONLY D.C. CIRCUIT LAW, IS IMPLICATED IN THIS DISPUTE. .........................................................................................................8

    A. Federal Circuit Law Does Not Apply Because the Documents at Issue Are Not Unique to Patent Law. ......................................................................................8

    B. Even under Federal Circuit Law, CPT Should Prevail. ..........................................9

VI. THE DISPUTED DOCUMENTS ................................................................................10

    A. Transmittal Letters and the Underlying Transmitted Documents. ........................10

    B. Recordations of Assignment ................................................................................12

    C. Patent Numbers ....................................................................................................12

    D. Documents Generated after the Commencement of the Central District Litigation ..............................................................................................................13

VII. CONCLUSION ............................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Alexander v. FBI*,
  186 F.R.D. 185 (D.D.C. 1999)..................................................................................4, 5

*Cates v. LTV Aerospace Corp.*,
  480 F.2d 620 (5th Cir. 1973) ........................................................................................7

*Cont'l Casualty Co. v. Darren Marsh*,
  No. 01 C 0160, 2004 U.S. Dist. LEXIS 76 (N.D. Ill. Jan. 5, 2004)..............................12

*GFL Advantage Fund, Ltd. v. Colkitt*,
  216 F.R.D. 189 (D.D.C. 2003).......................................................................................4

*Hicks v. Duckworth*,
  856 F.2d 934 (7th Cir. 1988) ........................................................................................8

*In re Jee*,
  104 B.R. 289 (Bankr. C.D. Cal. 1989)..................................................................7, 8, 9

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  118 S. Ct. 956, 140 L. Ed. 2d 62, 1998 U.S. LEXIS 1598, 1998 WL 85319 (U.S. 1998) .............................................................................................................................8

*McCook Metals LLC v. ALCOA Inc.*,
  192 F.R.D. 242 (N.D. Ill. 2000)..........................................................................9, 10, 12

*In re Sealed Case*,
  141 F.3d 337 (D.C. Cir. 1998).....................................................................................8, 9

*Simmons, Inc. v. Bombardier, Inc.*,
  221 F.R.D. 4 (D.D.C. 2004)...........................................................................................9

*Softview Computer Products Corp. v. Haworth, Inc.*,
  No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 4254 (S.D.N.Y. Mar. 31, 2000)...........10, 12, 14

*In re Spalding*,
  203 F.3d 800 (Fed. Cir. 2000)..................................................................................9, 10

*In re Wilmer, Cutler & Pickering*,
  255 F. Supp. 2d 1 (D.D.C. 2003)...................................................................................8

## STATUTES

Fed. R. Civ. P. 45(c)(1)..........................................................................................................8

DM_US\8274885.v1

I.  **INTRODUCTION**

While McKenna Long & Aldridge's ("McKenna") opposition to Chunghwa Picture Tubes, Ltd. ("CPT") motion to compel certainly is rich in accusations and derogatory remarks about CPT's counsel, it is wholly lacking in legal or factual support for any of its arguments. First, notwithstanding a thick written record to the contrary, McKenna argues that the parties never met and conferred to discuss the issues before the Court. It further argues that its inability to find a single day to discuss these issues between September 28 and October 26 is reasonable, and that CPT should have patiently waited until McKenna was ready and willing to have a further discussion before filing its motion, despite a looming discovery-motion hearing deadline of November 14, 2005.

McKenna also argues that CPT should not have issued the underlying subpoena out of this district, even though all of the documents sought by the subpoena were maintained in this district. It further argues that this motion should not be heard in this district, ignoring clear law to the contrary. Indeed, why a D.C. law firm would argue to have a motion to compel such as this one heard across the country in California federal court would be very curious were it not for the facts that (1) transferring the motion to California could jeopardize CPT's ability to have the motion heard at all before the November 14 cutoff, and (2) McKenna believes it can hide more of its documents under another jurisdiction's law.[1].

Finally, McKenna provides no justification for its refusal to produce certain documents or, at a minimum, supplement its privilege log with a meaningful description of the documents withheld. Nor has it even attempted to explain why it has not or should not redact certain allegedly privileged portions of the documents while producing the remainder. In short, McKenna has not refuted any of CPT's arguments, and CPT respectfully requests that the Court grant its motion.

---

[1] This belief in unfounded, however, as the types of documents in the instant dispute are not privileged or work product under any jurisdiction's law.

II. **THE PARTIES HAD A LENGTHY AND SUBSTANTIAL MEET AND CONFER, AND ANY FAILURE TO MEET AND CONFER FURTHER WAS THE FAULT OF MCKENNA.**

The factual record in this case completely belies McKenna's claim that CPT failed to meet and confer before filing this motion. To the contrary, to the extent any additional meetings would have been fruitful, the blame for such meetings not occurring falls squarely on McKenna.

First, between May and July 2005, the parties engaged in lengthy and detailed discussions – both by telephone and in writing – about the very issues before the Court. *See, e.g.,* Exhibits 7 through 16 of the Declaration of Scott B. Garner in Support of CPT's Motion To Compel ("Garner Decl."), filed October 24, 2005; *see also* Declaration of Julie S. Gabler in Support of CPT's Motion To Compel ("Gabler Decl."), ¶ 2, filed concurrently with this Reply. Although it was apparent from these discussions that the parties were at an impasse, CPT's counsel, Howrey LLP, nonetheless continued to make efforts to resolve at least some of the issues. That Howrey had to cancel a scheduled telephone call does not forever thereafter excuse McKenna from its own meet-and-confer obligations.[2] Yet, that in effect is McKenna's position, as it has been completely uncooperative in trying to schedule any further meeting.

McKenna claims that even though it could not or would not make itself available to talk, it acted reasonably by asking Howrey to send a written letter outlining the outstanding issues to be discussed at some unknown future time. McKenna's Opposition to the Motion To Compel, filed on November 2, 2005 ("Opp."), at 3. Howrey had done exactly that, however, several times, including in Howrey's September 28, 2005 letter. Garner Decl. Ex. 17. McKenna curiously responded to that letter on October 4 by ignoring the list of issues and asking Howrey to outline the issues it already had outlined. Garner Decl. Ex. 18. In Howrey's October 5 response to McKenna's October 4 letter, it pointed out that it twice had sent a list of issues to be discussed. Garner Decl. Ex. 19. Thus, the record is clear that McKenna knew what the issues

---

[2] Even the factual record from the July 2005 timeframe fails to support McKenna's argument. While Howrey did have to cancel the scheduled July 21 teleconference, McKenna stated in an email later that day (Ex. 2 to Declaration of Shari Klevens in Support of Opposition) that it would propose additional dates the next week, which it never did.

3

were, but did not address them and refused to meet within a reasonable time. CPT, through Howrey, has made the "good faith" effort required by Local Rule 7(m). As this Court previously has stated, "[t]he Local Rule contemplates that counsel will speak to each other; it does not anticipate that counsel's attempts to initiate a dialogue will be stonewalled." *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003) (finding it "unreasonable to insist that counsel wait for a response that never comes, like the two tramps who wait for Godot, before filing the motion").[3]

### III. CPT TIMELY FILED THIS MOTION, WHICH SEEKS TO ENFORCE A PREVIOUSLY-SERVED SUBPOENA.

McKenna argues that CPT's motion is untimely as "an inappropriate attempt to seek additional discovery after the close of discovery in the underlying action." Opp. at 5. CPT is not seeking relief to take additional discovery, however. It served the subpoena at issue on March 8, 2005 – far in advance of the August 5 discovery cutoff. The instant motion seeks to *enforce* McKenna's existing discovery obligations, not create new ones.

McKenna argues in its Opposition that an April 22, 2005 letter from Howrey to McKenna asking McKenna to move the process along so that CPT could do any additional follow-up discovery prior to the discovery cutoff (Ex. 3 to Declaration of Shari Klevens in Support of Opposition ("Klevens Decl.")) somehow constitutes an admission that this motion is untimely. That letter, however, has no bearing whatsoever on this issue. Opp. at 5. While McKenna's delay in producing documents and complying with its obligation to provide a meaningful privilege log may have prejudiced CPT's ability to conduct additional discovery based on what it learns from McKenna, it has not impacted CPT's right to enforce the subpoena that was timely served. Thus, similarly, the referenced August 12, 2005 Order denying CPT's ex parte application to take additional third party discovery (Opp. at 6) is irrelevant because that Order

---

[3] McKenna's reliance on *Alexander v. FBI*, 186 F.R.D. 185 (D.D.C. 1999), is misleading at best, as counsel in that case made no attempts to contact the other side to discuss the dispute. That is hardly the case here.

addressed a post-discovery cutoff request to take depositions that had not been scheduled prior to the discovery cutoff. That is not the case here.

McKenna also argues that November 14 is not really the deadline for the hearing of discovery motions in this case, pointing to an August 12, 2005 Scheduling Order.[4] *Id.* That Order, however, merely continues the deadline for the "hearing on *dispositive* motions" from November 14, 2005 to December 19, 2005. Klevens Decl. Ex. 5. (emphasis added). The previous Scheduling Order, which was issued on April 25, 2005, had set the deadline for the hearing of *all* motions – dispositive and non-dispositive alike – for November 14, 2005. Garner Decl. Ex. 21. Accordingly, when the Court moved only the dispositive motion deadline to December 19, 2005, the only logical inference is that the non-dispositive motion deadline remained November 14, 2005. McKenna's baseless assertion (which is repeated numerous times in its Opposition) that CPT is misleading the Court about the hearing deadline (Opp. at 6) is therefore refuted by the evidence before the Court.

Finally, McKenna argues that CPT's recent filing in the Central District of California of an *ex parte* application to have four motions to compel accepted for filing and heard – which the court granted over the opposition of underlying Central District litigation counsel Morgan Lewis & Bockius ("Morgan Lewis") – somehow proves that CPT was obligated to file a similar *ex parte* application in this instance. With respect to the motions to compel at issue in the Central District, they were filed far enough in advance of the November 14 cutoff to be heard by that date, but arguably not far enough in advance of the Court's last Tuesday hearing date before November 14. Accordingly, in an abundance of caution, CPT filed the *ex parte* application to ensure that the motions were heard. Here, there was no reason to file a similar *ex parte* application, but CPT did rightfully notify the Court of the November 14 deadline, and requested

---

[4] It is not clear how McKenna would be prejudiced in any event if the deadline were construed as being earlier than it originally believed. On the other hand, even if the deadline were December 19 (which it is not), CPT certainly would have good cause for wanting its motion heard earlier – given the February 28, 2006 trial date looming in this enormous case.

5

a hearing date on or before that date. More importantly, provided this motion can be heard on or before November 14, neither this Court nor any other has to extend the motion-hearing cutoff. Indeed, only if this Court transfers this matter to the Central District of California – a result that obviously would please McKenna, as discussed in Section IV below – would it become necessary to seek extraordinary relief to have the motion heard after November 14.[5] As matters stand now, however, this Court can and should hear this motion on or before November 14, 2005.

IV.     **THIS MOTION IS PROPERLY BEFORE THIS COURT.**

McKenna seeks to transfer this dispute to the Central District of California. Such transfer, even if permitted by this Circuit's law, which it is not, would serve no purpose other than to delay this matter and perhaps extend it past the November 14 hearing deadline.

The instant matter is firmly rooted in the District of Columbia. As discussed below, the Rule 45 subpoena was properly issued in D.C., and all of the documents at issue are located in D.C. McKenna does not dispute that its counsel who prosecuted the underlying patents in the United States are in D.C. Moreover, the attorneys handling the subpoena on behalf of McKenna are in DC. As repeatedly stated in response to CPT's efforts to set up a meet and confer, the McKenna attorneys involved in this matter have extremely demanding schedules – so much so that they have not been able to participate in a telephone conference since at least as early as September 29, 2005. Opp. at 3. And, no one from McKenna's California offices has been involved in either this instant subpoena dispute or in the underlying case. *See* Gabler Decl. at ¶ 3. Transfer of this matter to California would likely necessitate a hearing in California and could only increase the scheduling problems of the McKenna attorneys handling the subpoena. Thus, McKenna's only apparent benefit from transferring this matter would be the resultant delay and potentially missed hearing deadline, as well as a potential argument to apply any law ***other than*** D.C. Circuit law. (*See* discussion, *infra*, at § V.)

---

[5] Ironically, there is little doubt that, if that were to occur, McKenna would then argue that November 14, and not December 19, is the hearing deadline.

6

In any event, as discussed below, the law of this Circuit prohibits such a transfer.

### A.   The Subpoena Was Properly Issued in D.C., and Properly Served on McKenna's D.C. Office.

"[A] subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made." Federal Rule of Civil Procedure 45(a)(2). McKenna does not dispute that its counsel who prosecuted the underlying patents in the United States are in D.C. The bulk of McKenna's responsive documents are therefore presumably located in D.C. Thus, McKenna's statement that "it is not clear why CPT chose to issue its subpoena for documents on McKenna in the District of Columbia" is difficult to understand.

McKenna accuses CPT of forum shopping, a serious allegation made with no justification or support. First, any distinctions between the privilege laws of various jurisdictions are irrelevant to the issues in this motion. The disputed materials withheld by McKenna are not privileged under *any* jurisdiction's laws. Second, CPT did not select D.C. because it foresaw an eventual privilege dispute. Rather, CPT sought to comply with the requirements of the Federal Rules of Civil Procedure.

Had the discovery requests been issued in California, it is not at all certain that the Central District would have had the power to enforce production of documents maintained in D.C. McKenna argues that CPT might have sought the discovery at issue through the McKenna office in Los Angeles because that office would be required to produce documents located in D.C. This proposition is not at all certain, however. McKenna cites only *In re Jee*, 104 B.R. 289 (Bankr. C.D. Cal. 1989), to support its position. The *Jee* dispute centered around whether the California branch of a bank had to produce documents from related offices elsewhere in the country and in a foreign country. *Id.* While the bankruptcy court did order such documents to be produced, it noted substantial contrary authority, including the "leading" Fifth Circuit case of *Cates v. LTV Aerospace Corp.*, 480 F.2d 620 (5th Cir. 1973). *Jee*, 104 B.R. at 292. The *Jee* court recognized that "it is true that a majority of the courts that have considered this issue support *Cates*," but noted that "the holdings in *Cates* and its progeny are not binding upon this

7

court." *Jee* at 293 (citations omitted). No court has cited this *Jee* bankruptcy court decision for the proposition that a company may be required to produce documents located outside the jurisdiction where the subpoena was issued. Thus, at best it is unsettled whether a subpoena served on McKenna in California could have been enforced in connection with the documents at issue, which presumably are located in the District of Colombia. Given this, it would have been nothing less than foolish for CPT to serve the subpoena on McKenna's California office.

### B. D.C. Circuit Law Prohibits this Court from Transferring this Matter.

The text of Rule 45 "suggests that only the issuing court has the power to act on its subpoenas," and gives no hint that "any other court may be given the power to quash or enforce them." *In re Wilmer, Cutler & Pickering*, 255 F. Supp. 2d 1, 2 (D.D.C. 2003), *quoting In re Sealed Case*, 329 U.S. App. D.C. 374, 141 F.3d 337, 341 (D.C. Cir. 1991) (holding that a district court has no authority to transfer a Rule 45(c) motion to the district in which the underlying litigation is pending); *see also* Fed. R. Civ. P. 45(c)(1) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty...."); Fed. R. Civ. P. 45(c)(3)(A) ("On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena....").

McKenna concedes that *In re Sealed Case*, 141 F.3d 337 (D.C. Cir. 1998), prohibits the transfer of a motion to compel, but suggests that the Circuit Court prohibited transfer there based on a concern that the underlying-litigation court would not have personal jurisdiction over the subpoena target. Opp. at 16, n.6. This is incorrect. The opinion is not based on a concern with personal jurisdiction, but rather on the Federal Rules. The Circuit Court's holding states:

> In short, the idea that a district court may transfer a motion to quash a subpoena rests on a misreading of a non-authoritative source that relates to a different rule. The Rules of Civil Procedure themselves do not provide any basis for such authority, and district courts have no inherent powers to transfer. *See Hicks v. Duckworth*, 856 F.2d 934, 936 (7th Cir. 1988); *cf. Lexecon Inc. v.*

8

*Milberg Weiss Bershad Hynes & Lerach*, 118 S. Ct. 956, 140 L. Ed. 2d 62, 1998 U.S. LEXIS 1598, 1998 WL 85319, at *6-9 (U.S. 1998).

141 F.3d at 343. This Court is therefore unable to transfer this dispute as McKenna requests.

In addition, even if the determination of transfer were based on jurisdictional concerns, it is not clear, as explained above, that the Central District of California would have jurisdictional authority to compel McKenna's production of documents in D.C. McKenna cites only one self-proclaimed minority opinion from a bankruptcy court to support its position. *In re Jee*, 104 B.R. 289.

**V.    D.C. CIRCUIT LAW, AND ONLY D.C. CIRCUIT LAW, IS IMPLICATED IN THIS DISPUTE.**

   **A.    Federal Circuit Law Does Not Apply Because the Documents at Issue Are Not Unique to Patent Law.**

This dispute is not governed by Federal Circuit law because the information requested is not "unique" to patent law. *Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4, 9 n.5 (D.D.C. 2004); *In re Spalding*, 203 F.3d 800 (Fed. Cir. 2000) (applying Federal Circuit law to determine a dispute over invention records, which are unique to patent law or "implicates substantive patent law"). Contrary to McKenna's suggestion, Federal Circuit law does not automatically apply merely because the subject matter of a case concerns patents. Rather, federal courts apply the law of their circuit on all matters that do not specifically implicate issues unique to patent law. In a privilege dispute, a court must look to the type of document or information at issue.

McKenna cites two cases in support of its proposition that "decisions by district courts applying Federal Circuit law indicate that the courts are willing to take a more expansive view of the attorney-client privilege in patent cases." Opp. at 8. Ironically, these are the same two cases CPT cites in its opening brief to illustrate that the types of documents at issue in this matter implicate D.C. Circuit, and not Federal Circuit, law.[6] There, CPT stated that both *McCook*

---

[6] McKenna does not dispute CPT's account of these cases in the moving papers.

*Metals LLC v. ALCOA Inc.*, 192 F.R.D. 242 (N.D. Ill. 2000), and *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 4254 (S.D.N.Y. Mar. 31, 2000), limited the application of *in re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000).

The *McCook* court applied *Spalding* to invention control reports and invention control sheets, but found that Seventh Circuit law applied to determinations of privilege for the other documents – drafts of patent applications, the opposing party's patent portfolio, memoranda regarding royalty payments and other matters, cover sheets to faxes and memoranda, technical drawings, attorney/paralegal correspondence, and other documents. 192 F.R.D. at 252-256. The court noted that "several attorney-client privilege issues arise surrounding licenses and sagreements between the two parties. Contract law is the substantive law at issue in those instances, and patent law is irrelevant to the issue of privilege." *Id.* at 251. The court further noted that cover letters are not protected even under the broadest understanding of attorney-client privilege. 192 F.R.D. at 250.

In *Softview*, the court applied Second Circuit law in a patent case to determine that transmittal letters were not protected by attorney-client privilege or work product. 2000 U.S. Dist. LEXIS 4254 at *28-29 (finding designated "transmittal letters and fax cover sheets… are clearly not protected… .") *See also Fordham v. Onesoft Corp.*, No. Civ.A.00-1078-A, 2000 WL 33341416 (E.D. Va. Nov. 6, 2000) (finding no privilege for draft patent applications that did not reveal a privileged communication; noting that *In re Spalding* was not dispositive since that case addressed invention records, not draft patent applications.);

Transmittal letters are a classic example of documents created in the regular course of business and not unique to patent cases. Documents related to a recordation of an assignment – a sale or transfer of property – are similarly regular business documents that do not implicate issues unique to patent law. Accordingly, because the issues raised by CPT's motion are not unique to patent law, this Court should apply the law of the D.C. Circuit to this dispute.

### B. Even Under Federal Circuit Law, CPT Should Prevail

Although it vigorously argues that Federal Circuit law applies, McKenna fails to demonstrate that the choice of law would make any difference in the instant dispute. Nowhere does McKenna explain a difference between Federal Circuit and D.C. Circuit law relating to the issues before the Court, nor does it make any effort to apply Federal Circuit law to the facts of the instant dispute.

McKenna makes only one unsupported assertion that Federal Circuit law "is more expansive than the law of the District of Columbia." Opp. at 9. This statement is rendered meaningless by a lack of explanation or support. There is no indication that Federal Circuit law incorporates different factors or analysis than D.C. Circuit law. Indeed, while McKenna argues that Federal Circuit law also governs the work product analysis, it cites only a Federal Rule of Civil Procedure and two cases from the U.S. District Court for the District of Columbia. Opp. at 10-11.[7] Again, there is no application of any law to the facts of the documents at issue before this Court. Thus, no matter which law the Court applies, CPT should prevail.

### VI. THE DISPUTED DOCUMENTS

As an initial matter, McKenna fails to provide any argument for why it could not produce certain of the allegedly privileged documents in redacted form. As discussed below, for example, with respect to each of McKenna's transmittal letters, even if some small portion of the letter contains privileged matter, McKenna has asserted no basis for withholding the entire document with redactions.

---

[7] In this section of its Opposition, McKenna identified an alleged quotation CPT purportedly made regarding the Federal Rule of Civil Procedure and accuses CPT of a "serious misquote of the Rule." The identified text does not appear as a quotation anywhere in CPT's opening brief. As with so many other allegations of this sort in its Opposition, McKenna again provides no support.

### A. Transmittal Letters and the Underlying Transmitted Documents.

McKenna states that it did not withhold as privileged any transmittal letters or faxes that merely forwarded non-privileged correspondence. Opp. at 11. But with respect to the 79 or so transmittal letters it did withhold as privileged, McKenna fails to provide any meaningful description either of the transmittal letter or of what was transmitted. Indeed, McKenna admits that it withheld as privileged transmittal letters sent with other documents it considered to be privileged documents. *Id.* at 12. There are two problems with this. First, McKenna apparently did not separately describe the underlying document on its privilege log, so CPT has no way to assess McKenna's claim of privilege with respect to that underlying document. Second, whatever the character of the underlying document, McKenna still must adequately describe the transmittal letter, which it has not.

McKenna states that at least 16 of the 79 transmittal letter entries on the privilege log did not contain any attachment. *Id.* at 11. Taking this statement at face value, it still does not excuse McKenna's failure to adequately describe the transmittal letters in its privilege log. It also does not address the law cited in CPT's moving papers to the effect that transmittal letters are not privileged. *See, e.g., Cont'l Cas. Co. v. Darren Marsh*, No. 01 C 0160, 2004 U.S. Dist. LEXIS 76, at *10 (N.D. Ill. Jan. 5, 2004); *McCook*, 192 F.R.D. at 250, 254, and *Softview*, 2000 U.S. Dist. LEXIS 4254 at *28-29. Nor does it address McKenna's ability to redact any portions of the letters that actually may be privileged, thereby allowing it to produce the remainder of the documents.

Of the remaining 63 entries that appear to constitute transmittal letters, McKenna claims that any attachments either were separately listed on the privilege log or "are themselves subject to the attorney-client privilege or work product." Opp. at 12. As to the first point, it merely highlights the ambiguity of McKenna's privilege log. CPT cannot tell what is included in a particular entry. As to the second point, McKenna appears to be admitting that it has not described the underlying documents anywhere on the privilege log, but rather has implicitly

included them by including the page references under the descriptions of the transmittal letters. That obviously is not sufficient. If McKenna claims that an underlying document is privileged, it must list that document separately on the privilege log so that the claim can be assessed independently of the transmittal letter by CPT and, if necessary, by the Court. Moreover, even if some of these underlying documents are privileged (something that cannot be determined based on the current privilege log), that does not mean the transmittal letter also is privileged. Indeed, it may be very relevant for CPT to know to whom certain allegedly privileged documents were sent, and when.

Accordingly, McKenna should be ordered to produce the transmittal letters and underlying documents in question, describe them better on a supplemental privilege log, or submit them for an *in camera* review.

### B.      Recordations of Assignment

CPT seeks documents relating to the recordation of two specific patent assignments – one recorded in 1999 and another in 2003. In response, McKenna states that it has produced or logged its entire files of the patents at issue. McKenna does not address the point raised in CPT's moving papers, however, that one or more of these assignments may be listed on the privilege log in such a way that it cannot be identified. Thus, CPT cannot tell if McKenna simply does not have the documents, or has them but is for some reason claiming they are privileged.

In addition, McKenna argues that CPT is being disingenuous because it questioned McKenna attorney Song Jung at his deposition about "assignment documents." Opp. at 12. Although McKenna did produce some documents related to the 1999 assignment, it did not produce anything related to the 2003 assignment. Thus, CPT was left only with what it could find from public sources. Even with respect to the 1999 assignment, McKenna's limited production appears incomplete. Significantly, the public records CPT found relating to the 2003 assignment, and the few documents McKenna produced relating to the 1999 assignment, do not tell CPT what Mr. Jung or any other McKenna lawyer knew about the assignments, or when they

13

knew it. To the extent these public documents were transmitted to or from Mr. Jung (which should be, but is not, reflected in McKenna's privilege log entries), that information would be relevant.

### C.   Patent Numbers

CPT's inequitable conduct defense will succeed or fail with respect to each individual patent – not *en masse* in connection with all of the patents at issue. Thus, the identity of the specific patents at issue is relevant. McKenna does not dispute this. Moreover, McKenna has not given any explanation of how it even would be unduly burdened by providing the specific patent numbers at issue.

In a misguided effort to compare its own privilege log with one produced by CPT to Morgan Lewis earlier in the case, McKenna attaches CPT's privilege log to Ms. Klevens' declaration as Exhibit 8. Of course, CPT's privilege log is not at issue in this motion, and thus is completely irrelevant, but it is worth pointing out that CPT indeed included specific patent numbers in each of its entries relating to a patent. Thus, to the extent McKenna plans to rely on CPT's privilege log, that privilege log actually supports CPT's right to have this motion granted.

### D.   Documents Generated After the Commencement of the Central District Litigation

McKenna's only argument for why it should not have to log documents generated after the commencement of the Central District of California action is that CPT supposedly entered into an agreement with Morgan Lewis, counsel in the Central District action, to the effect that Morgan Lewis and Howrey would not have to log such documents. Opp. at 14. McKenna attaches no such agreement and does not state that *it* entered into such an agreement. To support its argument, McKenna describes itself as "co-counsel in the California action." *Id.*

As an initial matter, McKenna's description of itself as "co-counsel in the California action" is misleading, to say the least. In fact, other than defending itself against the instant subpoena in D.C. and defending McKenna attorney Song Jung in connection with his deposition

14

in D.C., McKenna has had no apparent role whatsoever in the California action. *See* Gabler Decl., ¶ 3. Morgan Lewis, and only Morgan Lewis, has represented LPL in that matter.[8] One can only surmise that McKenna seeks to describe itself as counsel in that action to bolster its privilege claims, but that strategy cannot work when the facts do not support the assertion.

In any event, whatever McKenna wants to call itself, it was and is LPL's patent counsel in connection with the patents at issue. As CPT stated in its moving papers – which McKenna did not refute – McKenna appears to be engaged in on-going patent prosecution efforts, which would be relevant to the claims in the underlying lawsuit. Accordingly, whether or not Howrey and Morgan Lewis have listed on their privilege logs documents created after the commencement of the underlying action, that does not impact whether McKenna has to list on its privilege log allegedly privileged documents generated after August 29, 2002. While it is not uncommon for *litigation* counsel to proceed in this manner, there is no basis for patent counsel here – where that patent counsel's actions are directly at issue – to take this same approach.

## VII.   CONCLUSION

McKenna has not raised any arguments that would justify its refusal to produce certain documents and/or supplement its privilege log. Accordingly, for the reasons stated in CPT's moving papers and in this reply brief, CPT respectfully requests that (1) this Court (a) order McKenna to produce each of the documents listed on the Second Supplemental Privilege Log, either in whole or with redactions; (b) compel McKenna to supplement its privilege log with more detailed descriptions of the documents withheld; or (c) order an *in camera* inspection of the documents at issue to determine if they are properly withheld from production as privileged; and

---

[8] In July 2005, four McKenna attorneys from its Washington, D.C. office moved for *pro hac vice* admission in the Central District of California action. Whether this was merely a tactic to bolster its claim of privilege herein, or had some other justification, the fact remains that, even since so moving, McKenna still has not appeared at any depositions, arguments, meet and confers, or in any other way shown itself to be Morgan Lewis' co-counsel.

(2) compel McKenna to produce or list on its privilege log all documents responsive to CPT's subpoena which were generated after August 29, 2002.

DATED: November 4, 2005                Respectfully submitted,

                                       _____
                                       James R. Wagner (D.C. Bar No. 440763)
                                       Carly N. Van Orman (D.C. Bar No. 482864)
                                       Howrey LLP
                                       1299 Pennsylvania Avenue, N.W.
                                       Washington, DC 20004
                                       (202) 783-0800 (Phone)
                                       (202) 783-6610 (Facsimile)

                                       Scott B. Garner (California Bar No. 156728)
                                       Howrey LLP
                                       2020 Main Street
                                       Suite 1000
                                       Irvine, CA 92614
                                       (949) 721-6900 (Phone)
                                       (949) 721-6910 (Facsimile)

                                       Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above has been served via email on the individuals listed below on this the 4th day of November, 2005 as follows:

>Gaspare J. Bono, Esq.
>Shari L. Klevens, Esq.
>McKenna Long & Aldrige LLP
>1900 K Street, NW
>Washington, DC 20006
>Email: gbono@mckennalong.com
>Email: sklevens@mckennalong.com
>
>Mark Krietzman, Esq.
>Frank Merideth, Esq.
>Greenberg Traurig, LLP
>2450 Colorado Avenue
>Suite 400 E.
>Santa Monica, CA  90404
>Email: KrietzmanM@GTLAW.com

And by email and personal service upon:

>Anthony C. Roth, Esq.
>Morgan, Lewis & Bockius, LLP
>1111 Pennsylvania Avenue, N.W.
>Washington, D.C.  20004
>Facsimile:  (202) 739-3001
>Email:  aroth@morganLewis.com

_____